Maxine G. Sleeper (MS 9533)
COOLEY GODWARD KRONISH LLP
1114 Avenue Of The Americas
New York, NY 10036-7798
(212) 479-6000

Robert R. Vieth (*pro hac vice*)
Joseph J. Samarias (*pro hac vice*)
Hans H. Chen (HC4379)
COOLEY GODWARD KRONISH LLP
One Freedom Square, Reston Town Center
11951 Freedom Drive
Reston, VA  20190-5656
(703) 456-8000

Attorneys For Defendants
Titan Holdings, Inc. f/k/a Jamegy, Inc.
And Titan Holdings, WV, Inc. f/k/a Jamegy WV, Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------ X
                                     :
AL SOLUTIONS, INC.,
                                     :
            Plaintiff,
                                     :
      vs.
                                       Case No. 08 CIV. 5515 (CM)
                                     :
JAMEGY, INC. a/k/a TITAN HOLDINGS,
INC. and JAMEGY WV, INC. a/k/a TITAN :
HOLDINGS WV, INC.,
                                     :
            Defendants.

------------------------------------ X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

**Page**

FACTS ........................................................................................................................ 2

    I.      SINCE FEBRUARY 2007, ALL OF TITAN'S BUSINESS
          OPERATIONS HAVE BEEN IN OREGON ....................................................... 2

    II.     THE APA REQUIRES TITAN TO REMAIN A FULLY-CAPITALIZED,
          ACTIVE BUSINESS, AND PURSUANT TO THIS TITAN HAS
          ENGAGED IN MANY ACTIVITIES FROM ITS OREGON
          HEADQUARTERS SINCE EARLY 2007 ......................................................... 3

ARGUMENT ............................................................................................................. 7

    I.      TITAN'S PRINCIPAL PLACE OF BUSINESS IS PORTLAND,
          OREGON ........................................................................................................ 7

    II.     TITAN IS NOT DEFUNCT, AND IN ANY EVENT, ITS MOST
          RECENT CORPORATE ACTIVITY TOOK PLACE IN OREGON ................ 12

          A.     Titan Is an Active Corporation ................................................. 13

          B.     Even If Titan Is Inactive, Its Principal Place of Business Is
                Oregon Where it Last Transacted Business ............................... 17

    III.    THE COURT SHOULD REJECT PLAINTIFF'S REQUEST FOR A
          STAY ............................................................................................................ 19

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

Page

## CASES

*Am. Booksellers Ass'n v. Houghton Mifflin Co.*,
No. 94 CIV. 8566, 1995 WL 92270, *7 (S.D.N.Y. March 3, 1995)....................19

*Anderson v. Watts*,
138 U.S. 694 (1891)................................................................................................7

*Athena Auto., Inc. v. DiGregorio*,
166 F.3d 288 (4th Cir. 1999) ............................................................................13

*Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*,
18 F. Supp. 2d 297 (S.D.N.Y. 1998)..................................................................14

*Cohn v. Taco Bell Corp.*,
147 F.R.D. 154 (N.D. Ill. 1993) .........................................................................19

*Fieger v. Pitney Bowes Credit Corp.*,
251 F.3d 386 (2d Cir. 2001)...............................................................................10

*Geritrex Corp. v. Dermarite Indus., LLC*,
910 F. Supp. 955 (S.D.N.Y. 1996).....................................................................16

*High Ridge Park Assocs. v. Nycom Info. Servs., Inc.*,
821 F. Supp. 835 (D. Conn. 1993) .....................................................................11

*Hollins v. U.S. Tennis Ass'n*,
469 F. Supp. 2d 67 (E.D.N.Y. 2006) .................................................................19

*Howard v. Galesi*,
107 F.R.D. 348 (S.D.N.Y. 1985) .......................................................................19

*Kamen v. A.T. & T. Co.*,
791 F.2d 1006 (2d Cir. 1986)...............................................................................9

*Kelly v. U.S. Steel Corp.*,
284 F.2d 850 (3d Cir. 1960)...............................................................................11

*Krauth v. Executive Telecard, Ltd.*,
887 F. Supp. 641 (S.D.N.Y. 1995).......................................................................8

*Kubin v. Miller*,
801 F. Supp. 1101 (S.D.N.Y. 1992)......................................................................8

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)............................................................................................19

*Maryland Cas. Co. v. W.R. Grace & Co.*,
23 F.3d 617 (2d Cir. 1993)...................................................................................7

*Midlantic Nat'l Bank v. Hansen*,
48 F.3d 693 n. 4 (3d Cir. 1995)..........................................................................14

*Morlee Sales Corp. v. Mfrs. Trust Co.*,
9 N.Y.2d 16, 19, 210 N.Y.S.2d 516, 518 (1961) ..............................................14

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Peters v. Timespan Commc'ns, Inc.*,
  No. 97 Civ. 8750, 1999 WL 135231, *4 (S.D.N.Y. Mar. 12, 1999) .................................... 14

*Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*,
  101 F.3d 900 (2d Cir. 1996)......................................................... 8, 11, 12, 14, 15, 17, 19

*Purchasing Assocs. Inc. v. Weitz*,
  196 N.E.2d 245, 246 N.Y.S.2d 600, 603 (1963)................................................. 16

*R.G. Barry Corp. v. Mushroom Makers, Inc.*,
  612 F.2d 651 (2d Cir. 1979)................................................................... 8

*Raine v. Entm't Acquisition Co.*,
  95 Civ. 3193, 1996 WL 428394, *3 (S.D.N.Y. July 31, 1996) ................................ 11, 14, 15

*Reiss v. Fin. Performance Corp.*,
  97 N.Y.2d 195, 738 N.Y.S.2d 658, 661 (2001) ................................... 14

*SEG Vanguard Gen. Corp. v. Ji*,
  195 F. Supp. 2d 564 (S.D.N.Y. 2002)........................................... 10, 14

*Uniroyal, Inc. v. Heller*,
  65 F.R.D. 83 (S.D.N.Y. 1974) ..................................................... 11

*Weissman v. Comm'r*,
  751 F.2d 512 (2d Cir. 1984)......................................................... 10

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
  608 F. Supp. 1261 (S.D.N.Y. 1985)............................................. 12

## STATUTES

28 U.S.C. § 1332(c) .......................................................................... 7, 12

In seeking a remand of this action removed to this Court by Defendants Titan Holdings, Inc. and Titan Holdings WV, Inc. (collectively "Titan"), Plaintiff AL Solutions, Inc. ("AL Solutions") has mischaracterized Titan's business, misquoted the statements of Titan's attorney, and misrepresented the terms of the contract at issue in this litigation.

This case involves the sale by Titan of most of its assets to AL Solutions under a comprehensive Asset Purchase Agreement ("APA"). AL Solutions' Motion to Remand is premised on its assertion that Defendants are "inactive" and "virtually barred from engaging in any ongoing active business activities" (Mem. of Law in Supp. of Pl.'s Motion to Remand ("Pl.'s Mem. of Law") at 5, 7). AL Solutions makes this claim based on little more than the standard non-compete clause contained in the Asset Purchase Agreement executed by AL Solutions and Titan. AL Solutions inexplicably reads Titan's non-compete agreement as tantamount to a dissolution agreement. Of course, the APA is no such thing. In fact, the APA, instead of calling for Titan's dissolution, calls for the very opposite: under the terms of the APA, Titan must remain in business and comply with numerous post-sale obligations. Titan is now doing exactly that, and doing so from its offices in Portland, Oregon. This Court has diversity jurisdiction over this case, which was properly removed to this Court.

AL Solutions also requests a stay of discovery pending resolution of its Motion to Remand. This request for a stay appears to be designed to increase whatever leverage AL Solutions may have by freezing the balance of the purchase price, $10 million, which remains in escrow. It is a rare thing for a plaintiff to request a stay of discovery, and AL Solutions' request should be denied because there is no plausible suggestion that AL

Solutions will be prejudiced by allowing the parties to take discovery on the merits of its

serious allegations.  The Court should deny AL Solutions' motion in its entirety.

## FACTS

On December 29, 2006, Defendants – then known as Jamegy, Inc. and Jamegy WV, Inc.

– and their related stockholders entered into an asset purchase agreement with Plaintiff AL

Solutions, Inc.  (*See* Asset Purchase Agreement, Dec. 29, 2006, (the "APA") attached as Ex. A to

Defs' Notice of Removal [Docket No. 1]).[1]

Pursuant to the APA, AL Solutions acquired substantially all of the assets of Jamegy, Inc.

and Jamegy WV, Inc. relating to (a) the manufacture, sale, and marketing for sale of titanium and

zirconium alloying products for the aluminum industry, (b) process technologies and services for

the aluminum industry, (c) aluminum grain refinement technology, products and services, and

(d) dry grinding replacement technology.  (Megy Decl. ¶ 5.)  Also included in this acquisition

was the former Jamegy manufacturing facility at 100 South Chester Street, New Cumberland,

West Virginia (the "West Virginia Facility").  (Megy Decl. ¶ 5.)

## I.    SINCE FEBRUARY 2007, ALL OF TITAN'S BUSINESS OPERATIONS HAVE BEEN IN OREGON

In February 2007, Titan relocated from the West Virginia Facility it had sold to AL

Solutions and established offices at 123 NW 12th Avenue, No. 343, Portland, Oregon.  In

October 2007, Titan moved to new offices at 1001 NW Lovejoy, No. 705, Portland, Oregon

97209.  Titan presently conducts its business and maintains its corporate books and records at

this latter location.  Likewise, to facilitate receipt of its official mail, Titan maintains a separate

corporate mailing address at P.O. Box 1417, Portland, Oregon 97207.  In addition, as required by

---

[1]    Consistent with the APA, Jamegy, Inc. changed its name to Titan Holdings, Inc., on or about January 11, 2007.  Jamegy WV, Inc. changed its name to Titan Holdings WV, Inc., on or about January 11, 2007.  The Titan entities, like their Jamegy predecessors, are privately-held entities incorporated under the laws of Oregon.  (Megy Decl. ¶ 6.)

its status as an Oregon corporation, Titan maintains a registered agent at 527 NW Third St.,

Corvallis, Oregon 97207.  (Megy Decl. ¶¶ 8-10.)

   Currently, Titan undertakes its operations through the use of consultants and its one

employee, Devin Megy ("Megy").  Megy is also Titan's sole executive officer, its President and

Chief Executive Officer, and one of two members of its board of directors (along with Joseph

Megy).  (Megy Decl. ¶ 12.)  Since the asset sale, Titan has paid Megy more than $100,000 for

his services as an employee and board member.  Since early February 2007, Megy has performed

his duties and made managerial decisions on behalf of Titan from its Portland, Oregon offices,

which are located within Megy's home.  To the extent that decisions on behalf of Titan require

consultation with Joseph Megy, the chairman of Titan's board of directors, those decisions are

made either in person at the company's offices in Portland, Oregon, or by telephone from Titan's

office to Joseph Megy's offices in Washington State.  (Megy Decl. ¶ 12.)

   Since Titan relocated its operations to Portland, Oregon in February 2007, it has had no

operations in West Virginia.  (Megy Decl. ¶¶ 11, 26.)  Although Titan neglected to revise certain

corporate filings in January 2008 to properly reflect the location of its principal place of business

in Oregon, those filings were updated prior to the date that AL Solutions filed its motion.  (Megy

Decl. ¶ 25; *see also* Megy Decl. ¶ 26) (noting similar filings in West Virginia reflect Portland,

Oregon as Titan's principal office address).

## II. THE APA REQUIRES TITAN TO REMAIN A FULLY-CAPITALIZED, ACTIVE BUSINESS, AND PURSUANT TO THIS TITAN HAS ENGAGED IN MANY ACTIVITIES FROM ITS OREGON HEADQUARTERS SINCE EARLY 2007

   Pursuant to the terms of the APA, Titan undertook numerous post-closing obligations.

(*See generally* APA §5 "Post-Closing Covenants") (undertaken collectively by Titan's

predecessors, Jamegy, Inc. and Jamegy WV, Inc., as "Seller").  For example, Titan agreed on a

going-forward basis: (a) to "not dissolve, liquidate or otherwise wind up its affairs" (APA §5.4);

(b) to not compete with AL Solutions in certain business areas (APA §5.1); (c) to keep "in effect and maintain the 'tail' insurance policy with respect to its existing Employer's Practices Liability insurance (APA §5.4); and (d) to discharge all of its Retained Liabilities, including liabilities related to two separate pre-closing fires at the West Virginia Facility acquired by AL Solutions, certain environmental and OSHA-related liabilities, and liabilities related to benefit and bonus payments to former employees (*see* APA §§5.6 and 1.3(b); and Schedules 1.3(b) and 1.4(c)). (Megy Decl. ¶¶ 16-17.)  For example, Titan retained liability related to the accidental death of an employee resulting from a July 18, 2006 fire at West Virginia Facility.  (Megy Decl. ¶ 16.)  The family of the deceased employee filed suit on November 8, 2006, and Titan continues to manage the defense of that litigation today.  (Megy Decl. ¶ 16.)

        In addition, Titan became obligated to "fund one or more accounts at one or more qualified financial institutions reasonably acceptable to Purchaser with [$5,000,000] . . . in available cash."  (APA §5.4.)  Titan presently maintains more than $5.6 million in interest-bearing accounts at PNC Bank in Pittsburgh, Pennsylvania.  Management of these accounts are directed by Megy from Titan' offices in Portland, Oregon.  Such accounts are maintained in part to satisfy Titan's administrative and legal expenses, to potentially fund the pursuit of new opportunities for growth consistent with Titan's non-compete obligations, to pay for the Retained Liabilities and resolve any indemnification claims, and to uphold Titan's on-going capitalization obligations under the APA.  (*See* APA §§ 5.1, 5.4.)  For example, since moving to Oregon, Titan has accessed these funds to make payments discharging its Retained Liabilities; including those related to the repair, replacement and refurbishment of the West Virginia Facility following a December 2006 fire.  (Megy Decl. ¶ 20.)

Moreover, pursuant to the APA, Titan agreed to certain going-forward environmental obligations. (APA §5.7.) For example, following the asset sale, Titan at its sole cost and expense contracted with an environmental consultant. At the request of Titan, this consultant has undertaken quarterly groundwater monitoring and annual surface water monitoring at the West Virginia Facility, and has prepared and submitted reports to Titan related to this monitoring. Titan also has retained this consultant to decommission and abandon all monitoring wells at the West Virginia Facility, to assist Titan in obtaining the requisite governmental authorizations for this work, and to undertake any additional work related to such authorizations. (Megy Decl. ¶ 19.) This work has been done (and will continue to be done) pursuant to the APA, which requires Titan, at its sole cost to (a) undertake all quarterly groundwater monitoring and annual surface water monitoring; (b) decommission and close or abandon all monitoring wells; (c) dispose off-site of any wastes generated as part of monitoring activities; and (d) undertake any additionally required investigation, remediation or monitoring activities. (APA §5.7; Megy Decl. ¶ 19.) Since at least March 2007, the environmental consultant performed this work for Titan, and is scheduled to do so through at least January 2009. (Megy Decl. ¶ 19.)

The APA also requires Titan to cooperate with AL Solutions on a going-forward basis regarding certain OSHA-related matters, and to cover costs associated with a December 2006 fire at the West Virginia Facility. Such costs include but are not limited to (a) the cost of building and equipment repairs, (b) the cost of any mutually agreed upon changes to equipment and operating procedures, and (c) the cost of any changes to the business required by governmental authorities. (*See* APA §§ 4.1(c), 5.8.) For example, in the months following the asset sale, Titan reimbursed AL Solutions for repair costs associated with the fire, and on

September 12, 2007, the parties entered into an Agreement Regarding Changes in Equipment and Operations. (*See* Megy Decl. ¶ 20 and Ex. 2 thereto.)

Pursuant to this agreement, Titan paid Plaintiff $184,000 related to the design and installation of a new lift system at the West Virginia Facility as well as mutually agreed upon changes to the facility's equipment and operating procedures. (Megy Decl. ¶ 20 and Ex. 2 thereto.) This agreement was based in part on an internal investigation of the December 2006 fire conducted by Titan in March 2007 as part of its post-closing obligations. Based on the results of this investigation, Titan prepared a first draft of the agreement in the summer of 2007, and transmitted it to AL Solutions. (Megy Decl. ¶ 20.) The parties thereafter exchanged several drafts of this agreement, and engaged in multiple discussions regarding its terms, over the course of several months. The parties, for example, negotiated the cost associated with the design and installation of the new lift system. (Megy Decl. ¶ 20.) Titan had originally proposed a payment of $115,000 related to this system; AL Solutions requested payment in the amount of $129,000. *Id*. Titan ultimately agreed to include the amount sought by AL Solutions in the final payment amount of $184,000. Titan undertook the underlying internal investigation, conducted these negotiations, executed the agreement, and authorized the $184,000 payment, from its Oregon headquarters. (Megy Decl. ¶ 20.)

Titan is actively managing its rights and obligations with respect to each of the foregoing post-closing covenants from its office in Portland, Oregon. (Megy Decl. ¶ 21.) Moreover, since its relocation to Portland, Oregon, Titan has considered new opportunities for growth consistent with its non-competition obligations under the APA. For example, Titan has contemplated providing consulting services to metals companies regarding the recovery of nickel and cobalt from certain contaminated metal scrap streams using a process technology developed by Joseph

Megy (US Patent 5,827,349).  (Megy Decl. ¶ 21.)  The recovered nickel and cobalt have value in market segments and in applications which lie outside the areas covered by the APA's non-compete provision.  As of this date, Titan has not pursued a consulting business based on this technology.  Nevertheless, Titan will continue to consider this and other opportunities.  (Megy Decl. ¶ 21.)

In its Complaint, filed May 20, 2008, AL Solutions has alleged that it is a "corporation organized under the laws of the State of Delaware" with "its principal place of business at New Cumberland, West Virginia." Complaint ¶ 10 (attached as Ex. A to Defendants' Notice of Removal [Docket No. 1]).  Contrary to the assertions in its present motion, AL Solutions has alleged that both Titan Holdings, Inc. and Titan Holdings WV, Inc. are corporations "organized under the laws of the State of Oregon" and that each "maintains its executive offices in Portland, Oregon."  (Megy Decl. ¶¶ 10-11.)[2]

## ARGUMENT

## I.    TITAN'S PRINCIPAL PLACE OF BUSINESS IS PORTLAND, OREGON

When determining whether diversity jurisdiction exists, a court must rely on the citizenship of the parties at the time the action was commenced.  *See Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir. 1993) (*citing Anderson v. Watts*, 138 U.S. 694, 702-03 (1891)).  For diversity purposes, a corporation is a resident of both its state of incorporation and the state of its principal place of business.  28 U.S.C. § 1332(c).

Where, as here, a corporation conducts its business policy and makes management decisions in a single state, determining a corporation's principal place of business is "relatively straightforward."  *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 906 (2d Cir.

---

[2]    Pursuant to the APA, the parties consented to the jurisdiction of this court and that of the state courts of New York.  (*See* APA ¶ 6.5.)

1996); *Kubin v. Miller*, 801 F. Supp. 1101, 1112 (S.D.N.Y. 1992). Where a corporation's operations are centralized, courts in this Circuit apply the "place of operations" or "locus of operations" test to determine a corporation's principal place of business. Here, Titan's operations are entirely centralized in Oregon. All corporate decisions are made from its office in Oregon. All corporate activities originate from Oregon. Its business policies and all management decisions are executed solely in Oregon. Thus, the "place of operations" test determines Titan's principal place of business. (Megy Decl. ¶ 12.)

Under the applicable "place of operations" test, a corporation's principal place of business is the location in which the corporation has its most extensive contacts with, or its greatest impact on, the general public. *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979); *Krauth v. Executive Telecard, Ltd.*, 887 F. Supp. 641, 647 (S.D.N.Y. 1995). In applying this test, courts have considered the location of the corporation's headquarters, the residence of its officers and employees, the location to which mail is sent, the place in which business decisions are made, and the place in which the company's books and records are kept. *See, e.g., Pinnacle Consultants, Ltd.*, 101 F.3d at 906-07. These factors point to Oregon, and only Oregon, as Titan's place of operations and principal place of business.

First, Titan is headquartered in Oregon. *See Pinnacle Consultants, Ltd.*, 101 F.3d at 906-07. For more than a year before the filing of this action, Titan's office have been located at one of two locations in Portland, Oregon. (Megy Decl. ¶ 8.) Titan's official company mail is sent to a post office box located near its headquarters. (Megy Decl. ¶ 9.) Titan keeps its corporate books and records at its Oregon headquarters. (Megy Decl. ¶ 8.) And Titan maintains a registered agent at 527 Northwest Third Street, Corvallis, Oregon 97207. (Megy Decl. ¶ 10.)

Second, Titan's Oregon headquarters serve as the place in which corporate decisions are made. (Megy Decl. ¶ 12.) Meetings are conducted from Titan's offices in Oregon. (Megy Decl. ¶ 12.) As noted above, Titan's business consists in part of executing and maintaining its post-sale obligations following its asset sale. (Megy Decl. ¶¶ 15-21.) This business entails entering into and supporting various contracts. For example, the West Virginia Facility acquired by AL Solutions suffered a fire in December 2006 that damaged a portion of the plant. As Titan's post-closing obligations required it to cover costs associated with this fire (*see* APA §§ 4.1(c), 5.8), Titan entered into a contract with AL Solutions, pursuant to which it paid AL Solutions $184,000. (*See* Megy Decl. ¶ 20; and Ex. 2 thereto.) Titan negotiated and executed this contract, and authorized the $184,000 payment, from its Oregon headquarters.

In its Complaint, AL Solutions acknowledged that Titan "maintains its executive offices" in Portland, Oregon. (Complaint ¶¶ 10-11.) Now, however, to suit its purposes, AL Solutions denies the existence of any Titan corporate offices at all. (Pl.'s Mem. of Law at 5; Declaration of J. Boyle ¶ 17 ("Boyle Decl.")).[3] Elsewhere, AL Solutions discounts the significance of Titan's Oregon office by characterizing it merely as the "residence of a single corporate officer." (Pl.'s Mem. of Law at 6.) The Court should reject Plaintiff's distortion for two reasons.

First, although Titan's Portland, Oregon office location is also Megy's residence it is from there that Megy directs Titan's operations and manages its obligations under the APA.

---

[3]    Mr. Boyle's assertion that "neither Defendant maintains a separate corporate office in Oregon" is based on an apparent misunderstanding of a conversation he had with Titan's counsel. *See* Declaration of Joseph Samarias filed in Support of Defendant's Opposition to Plaintiff's Motion to Remand ¶ 12 ("Samarias Decl."). As set forth in great detail in the Megy Declaration, however, Titan maintains its offices in Portland Oregon. In any case, the alleged statements of Titan's counsel are in no way determinative of this Court's jurisdictional analysis. *Cf. Kamen v. A.T. & T. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (refusing to consider attorney affidavit concerning subject matter jurisdiction where affidavit not based on personal knowledge).

(Megy Decl. ¶ 8.)  Second, the distinction Plaintiff draws between commercial office space and

home offices is meaningless for the purposes of determining principal place of business.  The

Second Circuit and courts in this district have recognized home offices for determining principal

place of business in jurisdictional and other contexts.  *See SEG Vanguard Gen. Corp. v. Ji*, 195

F. Supp. 2d 564, 565 (S.D.N.Y. 2002) (in diversity jurisdiction analysis, corporate citizenship

found to be location of business owner's home office, from which corporate activities were

undertaken); *see also Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 389 (2d Cir. 2001) (for

choice of law "grouping of contacts" analysis, financial advisor's home office constitutes

principal place of business).

      These principles are illustrated by *Weissman v. Comm'r*, 751 F.2d 512, 514-15 (2d Cir.

1984), where a college professor sought recognition of his home office for tax deduction

purposes.  The Second Circuit determined that for plaintiff to meet his burden, he needed to

establish that his home office was used exclusively on a regular basis as his "principal place of

business."  *Id.* at 514.  The Court considered three factors in its inquiry: (1) the nature of

business activities conducted at the home office, (2) the attributes of space in which such

activities can be conducted, and (3) the practical necessities of using a home office to carry out

such activities.  *Id.*

      Applying the *Weissman* test here, the office in Megy's home plainly serves as the Titan's

"principal place of business."  As noted above, Titan's business now consists of meeting its

various post-sale obligations under the APA while also exploring new opportunities for growth

consistent with its non-compete obligations.  This new business, as opposed to Titan's old

business of operating the West Virginia Facility and managing the technologies required to run

that facility, can be, and is, conducted with a telephone, computer, and filing cabinet.  (Megy

Decl. ¶ 8.)  Second, all of these items fit inside Megy's home office.  Finally, the practical

necessities of minimizing corporate expenses and maximizing efficiency provide adequate

explanation for using a home office.  (Megy Decl. ¶ 8.)  The location of Titan's headquarters in

Megy's home office, the actions and decisions executed there, and the books and records kept

there all point to Oregon as Titan's principal place of business.

Other relevant factors in the "place of operations" analysis include the location of the

business's employees and the location of its officers.  *See Pinnacle Consultants, Ltd.*, 101 F.3d at

906; *Raine v. Entm't Acquisition Co.*, 95 CIV. 3193, 1996 WL 428394, *3 (S.D.N.Y. July 31,

1996).  These factors, too, point to Oregon as Titan's principal place of business.  Titan's

business of meeting its post-sale obligations and exploring new technology opportunities

requires one paid employee, Megy.  The business requires one paid executive officer, its

President and Chief Executive Officer, Megy.  Megy is located in Oregon.  (Megy Decl. ¶¶ 1, 8,

12, 21.)

AL Solutions attempts to dispute Titan's Oregon location by citing outdated and

erroneous corporate filings.  (*See* Pl.'s Mem. of Law at 7-8.)  As an initial matter, statements

concerning principal place of business made in corporate filings are not dispositive.  *See High

Ridge Park Assocs. v. Nycom Info. Servs., Inc.*, 821 F. Supp. 835, 837-38 (D. Conn. 1993);

*Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 87 (S.D.N.Y. 1974) (holding that corporation's principal

place of business was Connecticut, not New York as it had listed on the SEC filings) (citing

*Kelly v. U.S. Steel Corp.*, 284 F.2d 850 (3d Cir. 1960) (holding that although the corporation had

filed its income tax returns in New York, it had its principal place of business in Pennsylvania)).

Furthermore, the information Plaintiff cites from the Oregon Secretary of State's website

is plainly incorrect.  (*See* Pl.'s Mem. of Law at 7-8; and Exs. A-D of the Boyle Declaration)

(listing the "principal place of business" for Titan as "100 South Chester Street, New Cumberland, West Virginia 26047; the location of the West Virginia Facility).  No one would know this better than AL Solutions, as it alone has operated the West Virginia Facility since AL Solutions acquired it in December 2006.  It is perhaps for this reason that Plaintiff's Complaint acknowledges that Titan "maintains its executive offices in Portland, Oregon."  (Complaint ¶¶ 10-11.)

Clearly this error in a form completed by Megy, a nonlawyer, has no significance to this Court's jurisdictional analysis.  To reflect the fact that Titan's business operations in West Virginia ceased with the sale of the West Virginia Facility and other assets, Titan recently revised its Oregon corporate filings.  (*See* Megy Decl. ¶ 25, and Ex. 3 thereto.)  These filings now correctly identify Portland, Oregon as Titan's principal place of business.  (*See* Megy Decl. ¶ 25 and Ex. 3 thereto.)

## II.    TITAN IS NOT DEFUNCT, AND IN ANY EVENT, ITS MOST RECENT CORPORATE ACTIVITY TOOK PLACE IN OREGON

In the face of these facts, AL Solutions hopes to bar Titan from proceeding in federal court by asserting that Titan is an "inactive" corporation, that last transacted business in West Virginia.  (Pl.'s Mem. of Law at 5-7.)[4]  Al Solutions' tactic is transparent:  in this Circuit, when a corporation has ceased business activity, diversity jurisdiction under 28 U.S.C. § 1332(c) is determined not only by its state of incorporation, but also by the place it last transacted business. *Pinnacle Consultants, Ltd.,* 101 F.3d at 907; *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 608 F. Supp. 1261 (S.D.N.Y. 1985), *aff'd in relevant part*, 933 F.2d 131

---

[4]    Again, this assertion appears to rest principally on AL Solutions' mischaracterization of statements made by Titan's attorney.  (*See* Samarias Decl. ¶ 12.)

(2d Cir. 1991).[5] AL Solutions' entire motion rests on this assertion and, indeed, AL Solutions

can only prevail if the Court finds Titan has ceased all business activities. Unfortunately for AL

Solutions, Titan is not inactive. And even if it were, its most recent business activities were

conducted in Oregon, not West Virginia.

### A.    Titan Is an Active Corporation

As an initial matter, AL Solutions has already acknowledged Titan's on-going status as

an active company. In the APA, AL Solutions and Titan agreed, as a post-closing condition of

the asset sale, that Titan ***"shall not dissolve, liquidate, or otherwise wind up its affairs"*** until at

least all claims on the escrow account (such as those here at issue) have been settled. (APA § 5.4

(emphasis added)). Thus, even though AL Solutions now accuses Titan of winding down (Pl.'s

Mem. of Law at 5-6), AL Solutions earlier recognized that so long as open claims remain on the

escrow account, Titan could not and would not dissolve, liquidate, or wind up its affairs. (APA §

5.4.)[6]

---

[5]    The Second Circuit's view that an inactive company's principal place of business turns
on its last business transaction is not shared by its sister circuits. *See Athena Auto., Inc. v.
DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999) (discussing circuit split). Nevertheless, the
Second Circuit's position arises from the fear that a corporation with a principal place of
business in common with an adverse party would try to manufacture diversity jurisdiction by
claiming in bad faith to be defunct. If accepted, this might lead courts to accept diversity
jurisdiction based only on a corporate litigant's place of incorporation, instead of on its place of
incorporation *and* principal place of business. *See Wm. Passalacqua Builders,* 608 F. Supp. at
1261. Titan is not seeking to accomplish that here and there can be no suggestion that Titan has
attempted to manipulate it operations as a means of gaining access to a federal court. Titan has
no hesitation in inviting the Court to examine its principal place of business. *See supra*, at 2-12.
It only believes its principal place of business, whether as an active or inactive company, is
Oregon.

[6]    Indeed, in late 2006, Jamegy, Inc. considered the possibility of liquidation following the
execution of the APA. (Megy Decl. ¶ 13.) In light of the post-closing obligations the parties
ultimately negotiated, however, Jamegy, Inc. did not pursue such liquidation. (Megy Dec. ¶ 13.)
Consequently, and consistent with the APA, Titan has remained an active corporation following
the transaction, as described herein.

Of course, AL Solutions has not accused Titan of breaching this provision of the APA. Instead, Al Solutions hopes that the Court will agree with its current contention that Defendants are "winding down their business" by reading Section 5.4 out of the APA. This the Court may not do. "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Morlee Sales Corp. v. Mfrs. Trust Co.*, 9 N.Y.2d 16, 19, 210 N.Y.S.2d 516, 518 (1961); *accord Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199, 738 N.Y.S.2d 658, 661 (2001).

The case law confirms that Titan is an active corporation. For example, this Court has held that an "inactive" corporation is one that "has ceased any and all business activities." *Raine*, 1996 WL 428394 at * 4 (*citing Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 n. 4 (3d Cir. 1995)). Likewise, this Court has held that an "active" corporation is one that conducts business transactions that go toward the furtherance of the corporation. *See Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 18 F. Supp. 2d 297, 303 (S.D.N.Y. 1998) (citing *Pinnacle Consultants, Ltd.*, 101 F.3d at 907 n.5 (2d Cir. 1996)). Thus, managing investments can constitute business activity if the company's business purpose is the management of assets. *Pinnacle Consultants, Ltd.*, 101 F.3d at 907 n.5; *Peters v. Timespan Commc'ns, Inc.*, No. 97 CIV. 8750, 1999 WL 135231, *4 (S.D.N.Y. Mar. 12, 1999). Likewise, paying employee salaries and benefits can also constitute business activities. *SEG Vanguard Gen. Corp.*, 195 F. Supp. 2d at 568 (company found active after it moved headquarters to president's home office because it continued to pay employees' salaries and benefits).

Not surprisingly, in determining what constitutes a "business transaction," courts have acknowledged that a company can change the business purposes to which its transactions are intended to further. In *Raine*, the defendant formed as a film acquisition company. 1996 WL

428394 at * 2.  After completing those acquisitions, the defendant changed its business purpose to the collection and allocation of royalty revenues and negotiation of certain retained film rights. *Id.*  In determining whether the defendant was still an active corporation, the court considered whether it had made business transactions in furtherance of its new business purpose.  *Id.*  The *Raine* court concluded that defendant "cannot . . . by any stretch of imagination be considered inactive" and held that "where [a] corporation had not formally ceased operations or begun winding up procedures, [the] fact that it was not engaged in 'traditional business activities' did not render it inactive."  *Id.* at *4 (internal citation omitted).

Similarly, in this case, Titan's business activities relate to its purpose of executing its post-sale obligations and investigating new business opportunities.  The Court should not expect to find business activities related to its prior business of managing metallurgical technology and production.  Instead, as set forth above, Titan has furthered its business purpose by engaging in the following activities:

> • Titan's maintenance of more than $5.6 million in interest-bearing accounts to satisfy Titan's administrative and legal expenses, to potentially fund the pursuit of new opportunities for growth consistent with Titan's non-compete obligations, to pay for the Retained Liabilities and resolve any indemnification claims, and to uphold Titan's on-going capitalization obligations under the APA.  (*See* APA §§ 5.1, 5.4; Megy Decl. ¶ 14.)[7]
>
> • Titan's maintenance of certain insurance policies.  (APA § 5.4; Megy Decl. ¶ 17.)
>
> • Titan's cooperation with plaintiff in certain OSHA-related matters, including retaining consultants, entering contracts, and paying costs related to the December 2006 fire at the West Virginia Facility.  (APA § 5.8; Megy Decl. ¶ 20 and Ex. 2 thereto.)

---

[7]    AL Solutions makes much of the fact that these accounts are located outside of Oregon (although conceding they are not held in West Virginia).  (*See* Pl.'s Mem. of Law at 5 n.7.)  AL Solutions, of course, ignores that the existence of these substantial accounts further establishes Titan's status as an active corporation.  *See Pinnacle Consultants, Ltd.,* 101 F.3d at 906-07.

• Titan's management of certain post-closing environmental obligations, including contracting with and paying for the services of an environmental service provider.  (APA § 5.7; Megy Decl. ¶ 19.)

• Titan pursuit of new opportunities for growth consistent with the APA's non-compete clause.  (Megy Decl. ¶ 21.)

• Titan's payments to an executive, Megy, and to third parties to carry out the business activities described above.  (Megy Decl. ¶¶ 12, 19, 20.)

AL Solutions cites no case in which a corporation with as much business activity as Titan is found to be inactive.  (*See* Pl.'s Mem. of Law at 6.)  Nevertheless, against this litany of ongoing and recently completed business, AL Solutions pushes forward with its "inactivity" argument, relying heavily on the APA's non-competition clause for support.  (Pl.'s Mem. of Law at 7.)  In light of the APA's "no dissolution" clause (§ 5.4), however, the parties could not have intended the agreement's "non-competition" clause to result in Titan's dissolution.  Indeed, such an agreement would be an unenforceably broad application of a restrictive covenant.  Non-competition agreements, even those executed in connection with the sale of a business, may not be "more extensive, in terms of time and space, than is reasonably necessary to the buyer for the protection of his legitimate interest in the enjoyment of the asset bought."  *Purchasing Assocs. Inc. v. Weitz*, 196 N.E.2d 245, 271-72, 246 N.Y.S.2d 600, 603 (1963).  A non-compete agreement may not seek to drive a competitor out of business or render its business defunct. *Geritrex Corp. v. Dermarite Indus., LLC*, 910 F. Supp. 955, 965 (S.D.N.Y. 1996).

AL Solutions' claim also lacks any basis in fact. The plain language of the APA demonstrates that the non-competition clause does not require Titan to become inactive.[8] Rather, the non-competition clause requires Titan only to avoid certain technologies, products and services which serve the aluminum industry. Although this clause encompasses the work performed by the former Jamegy entities, it does not "virtually bar[] [Titan] from engaging *in any ongoing active business activities*," as Plaintiff asserts. (Pl.'s Mem. of Law at 7) (emphasis added). Indeed, following the acquisition, Titan contemplated providing consulting services to metals companies in market segments and in applications which lie outside the areas covered by the APA's non-compete provision. (Megy Decl. ¶ 21.) As noted above, identifying such new opportunities for growth remains one of Titan's business purposes today.

AL Solutions' argument that the non-competition clause renders Titan inactive has no basis in law or fact. The Court should reject it.

**B.      Even If Titan Is Inactive, Its Principal Place of Business Is Oregon Where it Last Transacted Business**

AL Solutions argues that Titan is defunct and merely waiting for the resolution this lawsuit promises on the escrow payments. (Pl.'s Mem. of Law at 5-6.) Titan's connection to Oregon, however, is so assured that even if the Court were to view Titan as a defunct corporation, diversity jurisdiction would still exist. *See Pinnacle Consultants, Ltd.,* 101 F.3d at 907 (for diversity jurisdiction, citizenship of a defunct or inactive corporation arises not only

---

[8]      The APA's "Non-competition" clause provides in pertinent part that "For a period of 10 years after Closing Date, neither Seller nor any Stockholder . . . [shall] invest in, own, manage, operate, finance, control, advise, render services to or guarantee the obligations of any Person engaged in or planning to become engaged [ ] in the Business." (APA § 5.1.) The APA defines "Business" to include: "[T]he manufacture, sale, marketing for sale, and licensing of alloying products, process technologies and services for the aluminum industry, including, but not limited to, titanium, zirconium, and grain refinement technology, products and services and dry grinding replacement technology…." (APA at 1, "Recital".)

from its state of incorporation but also from the place it last transacted business); *Wm. Passalacqua Builders, Inc.*, 608 F. Supp. at 141 (same).

As set forth above, since February 2007, all of Titan's business operations have been in Oregon. For example, on September 12, 2007, eight months after Titan moved its headquarters to Oregon, Titan executed an agreement with AL Solutions in which Titan paid $184,000 related to mutually agreed upon changes in equipment and operating procedures at the West Virginia Facility acquired by AL Solutions. (Megy Decl. ¶ 20. and Ex. 2 thereto.) The money paid by Titan funded the retention and payment of consultants, as well as the design and installation of a new lift system at the West Virginia Facility and the implementation of several additional changes to the facility's equipment and operations. (Megy Decl. ¶ 20 and Ex. 2 thereof.)

The September 2007 agreement was based in part on an internal investigation of the December 2006 fire conducted by Titan in March 2007. Based on the results of this investigation, Titan prepared a first draft of the agreement in the Summer of 2007, and transmitted it to AL Solutions. (Megy Decl. ¶ 21.) The parties thereafter exchanged several drafts of this agreement, and engaged in multiple discussions regarding its terms, over the course of several months. For example, the parties negotiated the cost associated with the design and installation of a new lift system at the West Virginia Facility. (Megy Decl. ¶ 21.) Titan had originally proposed a payment of $115,000 related to this system; AL Solutions requested payment in the amount of $129,000. Titan's President and Chief Executive Officer, Megy, engaged in several conversations with AL Solutions regarding the basis for its request and, on behalf of Titan, ultimately agreed to include the amount sought by AL Solutions into the final payment of $184,000. Titan undertook the underlying internal investigation, conducted these negotiations, executed the agreement, and authorized the $184,000 payment from its Oregon

headquarters.  (Megy Decl. ¶ 21.)  Thus, even if the Court were to find Titan is now inactive,

Titan last transacted business in Oregon, and Oregon would remain Titan's principal place of

business for diversity purposes.  *See Pinnacle Consultants, Ltd.,* 101 F.3d at 907.

## III.    THE COURT SHOULD REJECT PLAINTIFF'S REQUEST FOR A STAY

As part of its motion AL Solutions also seeks a stay of discovery pending resolution of

the motion to remand.  A stay of these proceedings is unwarranted.

Courts do not generally grant a stay or other protective order unless the movant has made

a showing of "good cause."  *Howard v. Galesi*, 107 F.R.D. 348, 350 (S.D.N.Y. 1985) (citation

omitted).  The party seeking the stay "'must make out a clear case of hardship or inequity in

being required to go forward, if there is even a fair possibility that the stay for which he prays

will work damage to someone else.'"  *Am. Booksellers Ass'n v. Houghton Mifflin Co.*, No. 94

CIV. 8566, 1995 WL 92270, *7 (S.D.N.Y. March 3, 1995) (quoting *Landis v. N. Am. Co.*, 299

U.S. 248, 254-55 (1936).

The burden of establishing "good cause" lies with the party seeking the protective order.

*Id.*  A stay of discovery is disfavored even during the pendency of a dispositive motion.  *See id.*;

*Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006).  Courts disfavor stays

because they contravene the prevailing policy that "[a]ll proper discovery requests should go

forward."  *Howard*, 107 F.R.D. at 351.  *See also Cohn v. Taco Bell Corp.* 147 F.R.D. 154, 162

(N.D. Ill. 1993) (stays disfavored because they "delay or prolong discovery, thereby causing

management problems which would impede the court's responsibility to expedite discovery and

cause unnecessary litigation expense and problems").

AL Solutions fails to provide good cause for a stay.  AL Solutions' brief argues that

"Defendants cannot show that any prejudice will result from a brief stay of discovery pending

resolution of this motion." (Pls.' Mem. of Law at 9-10.) This statement is off the mark for two reasons.

First, the policy behind timely, complete, and expeditious discovery moves the burden for granting a stay onto AL Solutions; Titan has no burden to argue against a stay. *Landis*, 299 U.S. at 255. Here, AL Solutions cannot show that "hardship or inequity" will result from discovery going forward. Indeed, it was AL Solutions that filed this lawsuit, albeit in a different court. The parties' discovery obligations will exist regardless of the outcome of AL Solutions' motion. AL Solutions will suffer no material prejudice – indeed, it will not even face inconvenience – by allowing discovery to proceed.

Second, a stay will prejudice Titan. Titan is entitled to recover the $10 million balance of the purchase price, which remains in escrow pursuant to the APA. (*See* APA §1.4 (c)). By filing its unfounded Complaint, AL Solutions has blocked the escrow agent from making these payments to Titan until such time as this Court renders its final judgment in this matter. (*Id.*) Titan is entitled to these funds, and is entitled to them now. AL Solutions should not be permitted to forestall Titan's ability to collect these substantial funds by seeking a stay where none is merited.

AL Solutions' request for a stay of discovery should be rejected.

## CONCLUSION

Titan has met its burden of establishing complete diversity between it and Plaintiff. Titan's principal place of business, the state from which it continues to conduct its business affairs, is Oregon. Even if the Court rules Titan an inactive corporation, Titan's principal place of business is still Oregon, the place from which it last conducted a business transaction. In

addition, AL Solutions has not met its burden of establishing good cause exists for the issuance

of a stay.

For these reasons, Titan respectfully requests that the Court deny Plaintiff's Motion to

Remand in its entirety.

Dated: July 22, 2008

Respectfully submitted,

COOLEY GODWARD KRONISH LLP

By:＿＿＿＿＿＿ /s/ Hans H. Chen ＿＿＿＿＿＿
　　　　　Hans H. Chen

Robert R. Vieth (*pro hac vice*)
Joseph J. Samarias (*pro hac vice*)
Hans H. Chen (HC4379)
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA  20190-5656
(703) 456-8000

Maxine G. Sleeper (MS 9533)
1114 Avenue of the Americas
New York, NY 10036-7798
(212) 479-6000

*Attorneys for Defendants Titan Holdings,*
*Inc. f/k/a Jamegy, Inc. and Titan Holdings,*
*WV, Inc. f/k/a Jamegy WV, Inc.*

371238/RE