Michael W. Mitchell
John Boyle
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York  10022
(212) 735-3000
*Attorneys for Plaintiff AL Solutions, Inc.*


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                             :

AL SOLUTIONS, INC.,                                                 :

                             :

              Plaintiff,                           :     08 Civ. 5515 (CM)

                             :

      - against -                                              :

                             :

                             :

JAMEGY, INC. a/ka/ TITAN HOLDINGS, INC.,          :
JAMEGY WV, INC. a/ka TITAN HOLDINGS WV,          :
INC.,                                                               :

                             :

            Defendants.                          :

                             :
----------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFF'S MOTION TO REMAND</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     DEFENDANTS FAILED TO DISCHARGE
       THEIR BURDEN TO ESTABLISH COMPLETE DIVERSITY . . . . . . . . . . . . . . . . . . . . . 2

A.     Defendants Failed to Proffer Proof of Each Defendant's Citizenship . . . . . . . . . . . . . . . . . . 2

B.     Defendants Are Inactive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       (1)    Post-Closing Obligations Are Not Ongoing Business Transactions . . . . . . . . 4

       (2)    Contemplation of Future Activities Does Not Make Defendants
              "Active" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       (3)    Payment of a Single Nominal Salary Does Not Make Defendants
              "Active" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.     West Virginia Was the Last Place That Defendants Conducted Business . . . . . . . . . . . . . . . 7

II.    EVEN UNDER THE "PLACE OF OPERATIONS " TEST
       WEST VIRGINIA IS DEFENDANTS' PRINCIPAL PLACE OF BUSINESS . . . . . . . . . . 7

III.   A STAY PENDING RESOLUTION OF THIS MOTION IS WARRANTED . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**Page(s)**

*Bialac v. Harsh Building Co.*, 463 F.2d 1185 (9th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Bonnie & Co. Fashions v. Bankers Trust Co.*, 18 F. Supp. 2d 297 (S.D.N.Y. 1998) . . . . . . . 3, 4, 5, 6

*Circle Industries USA, Inc. v. Parke Construction Group, Inc.*, 183 F.3d 105 (2d Cir. 1999) . . . . . 8

*Ehrenspeck v. Spear, Leeds & Kellogg*, 389 F. Supp. 2d 485 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . 2

*Geiger v. Arctco Enterprises, Inc.*, 910 F. Supp. 130 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . 2

*Hungarian Broad. Corp. v. Coleman & Co.*, No. 96 Civ. 0048, 1996 U.S. Dist. LEXIS 9204
      (S.D.N.Y. July 2, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Interpetrol Bermuda, Ltd. v. Rosenwasser*, No. 86 Civ. 5631, 1987 WL 7734
      (S.D.N.Y. Mar. 3, 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Murray v. Hy Cite Corp./Royal Prestige*, 150 F. Supp. 2d 527, 530 (E.D.N.Y. 2001) . . . . . . . . . . 10

*Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 98 S. Ct. 2396,
      57 L. Ed. 2d 274 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pine Ridge Realty Corp. v. Block & Co.*, No. 97-2076, 1997 WL 292136
      (D. Kan. May 16, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 612 F.2d 651 (2d Cir. 1979). . . . . . . . . . . . . . 3

*R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651 (2d Cir. 1979). . . . . . . . . . . . . . . . . . . . 8

*Raine v. Entertainment Acquisition Co.*, No. 95 Civ. 3193, 1996 WL 428394
      (S.D.N.Y. July 31, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Riklis v. Reese*, No. 06 Civ. 6368, 2007 WL 1946536 (S.D.N.Y. June 28, 2007) . . . . . . . . . . . . . . . 8

*SEG Vanguard General Corp. v. Jianxiong Ji*, 195 F. Supp. 2d 564 (S.D.N.Y. 2002) . . . . . . . . . . . 6

## PRELIMINARY STATEMENT

Plaintiff AL Solutions, Inc. moved to remand this matter to state court due to the absence of diversity jurisdiction among the three parties.  In their opposition, Defendants Jamegy, Inc. and Jamegy WV, Inc. (together the "Defendants")[1] improperly treat the two separate corporate Defendants as a single entity, ignore the operative Second Circuit standard and repeatedly misstate Plaintiff's argument.

As discussed further below, Defendants bear the burden of establishing that *each* defendant is diverse from the Plaintiff. By failing to address the citizenship of each separate corporate defendant, they have failed to satisfy this burden.

Moreover, in an unavailing effort to establish that they are "active" corporations, Defendants rely almost entirely on activities relating to their resolution of obligations which arose prior to the sale of their business to the Plaintiff in 2006.  These are not activities which go toward the furtherance of the corporations' business that the Second Circuit has held are the earmarks of an "active" corporation.  Accordingly, Defendants' principal places of business remain the last states where they actually transacted business:  West Virginia.

Finally, Defendants argue that the Second Circuit's treatment of inactive corporations should be ignored and their principal places of business should be determined under the "place of operations" test.  Even under this test, however, Defendants' principal places of business remain in West Virginia.

---

[1]    On or about January 16-18, 2007, the Defendants Jamegy Inc. and Jamegy WV, Inc. changed their names to Titan Holdings, Inc. and Titan Holdings WV. Inc., respectively. *(See* Notice of Removal Paragraph 4)

1

## ARGUMENT

I.    **DEFENDANTS FAILED TO DISCHARGE
      THEIR BURDEN TO ESTABLISH COMPLETE DIVERSITY**

Plaintiff moved to remand based upon well-established Second Circuit authorities holding that an inactive corporation's principal place of business is the last state in which the corporation actively transacted business. *(See* Pl. Br. at 3-8). Defendants attempt to oppose this motion by: (A) seeking to treat the two separate corporate defendants as one; (B) claiming that activities relating to the satisfaction of their post-closing obligations under the terms of the APA render them "active" corporations; and (C) claiming that, even if they were inactive as of the date of the filing of this action, Oregon was the last place they transacted business.  None of these contentions has merit.

A.    **Defendants Failed to Proffer Proof of Each Defendant's Citizenship**

The burden of establishing the propriety of this Court's jurisdiction rests squarely on the Defendants. (*See* Pl. Br. at 3). In order to satisfy this burden, the Defendants must proffer "competent proof" sufficient to establish that there is complete diversity. *Ehrenspeck v. Spear, Leeds & Kellogg*, 389 F. Supp. 2d 485, 488 (S.D.N.Y. 2005). Where, as here, the removing party fails to meet this burden, the action must be remanded. *Id.*

Throughout their opposing papers, Defendants ignore the fact that there are *three* parties in the action, the Plaintiff Al Solutions and the two individual corporate Defendants: Jamegy, Inc. and Jamegy WV, Inc. Instead, Defendants have defined these two distinct defendants as a single entity, "Titan," and do not ascribe any specific activities or conduct to one or the other. Such submission is insufficient to establish the requisite complete diversity. *See Geiger v. Arctco*

*Enters., Inc.*, 910 F. Supp. 130, 131 (S.D.N.Y. 1996) (allegation that "the plaintiff" is a New York resident is defective to establish diversity where it ignores the fact there are two plaintiffs).

This failure is dispositive because if *either* one of the two Jamegy Defendants is a citizen of West Virginia, under any applicable test, diversity is destroyed. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff.").

## B.    Defendants Are Inactive

Defendants mistakenly claim that an inactive corporation is one which has "ceased all business activities." (Def. Br. at 13).  Rather, the law is clear that an inactive corporation is one which is no longer engaged in activities that "go[] toward the furtherance of the corporation." *Bonnie & Co. Fashions v. Bankers Trust Co.*, 18 F. Supp. 2d 297, 303 n.6 (S.D.N.Y. 1998) (*citing Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 907 n.5 (2d Cir. 1996)). It is a standard Defendants cannot meet.

For more than a decade, Defendants conducted their business from a manufacturing facility in West Virginia. Following the sale of their business to the Plaintiff, a single corporate officer, Devin Megy, moved his personal residence to Oregon. (Megy Aff.¶ 8). From his home, Mr. Megy has engaged in a number of activities in connection with the resolution of post-closing obligations and efforts to resolve past liabilities of Defendants. (Megy Aff.¶¶ 8, 14-20). Critically, however, since the sale to the Plaintiff, neither Defendant has engaged in a single business transaction of a forward-looking nature, maintained any operations, nor generated a penny in revenue.

3

Defendants point to six activities which they claim support their argument that both corporations are "active" for purposes of ascertaining diversity jurisdiction. (Def. Br. at 15). Their argument is unavailing.

### *(1)    Post-Closing Obligations Are Not Ongoing Business Transactions*

The first four "activities" to which Defendants point are: (i) the maintenance of a bank account: (ii) the maintenance of a "tail" insurance policy; (iii) cooperation with Plaintiff in certain OSHA-related matters relating to a fatal 2006 fire which occurred at Defendants' plant before the sale to the Plaintiff; and (iv) Defendants' management of certain post-closing environmental issues. (Def. Br. at 15-16). All of these obligations concern Defendants' satisfaction of post-closing covenants under the APA. (*Id.*) Not one involves a forward-looking business transaction.

Defendants have financial exposure relating to certain issues that arose during their operational control over the business, most notably two fires which occurred at Defendants' West Virginia plant, one of which resulted in an employee's death. As a result, under the terms of the APA, Defendants are obligated to defend that wrongful death suit and to bear the cost of any judgment, as well the cost of government investigations and certain repairs occasioned by those fires. In order to secure Defendants' ability to satisfy these potential expenses, the APA requires Defendants to remain sufficiently capitalized to deal with risk of liability from these *past* activities and prohibits Defendants from technically "winding up" and liquidating their remaining assets. (*See* APA § 5).

All of these obligations relate to past obligations and none are "competent proof" that Defendants are ongoing, revenue-generating businesses. In this regard, the decision in *Bonnie & Co. Fashions v. Bankers Trust Co.*, 18 F. Supp. 2d 297, 303 (S.D.N.Y. 1998), upon which

4

Defendants inexplicably rely, is determinative. There, the plaintiffs claimed that, following their move from New York to New Jersey, they were engaged in "substantial business activity including[] the collection of receivables . . . the reconciliation of its factor account [with a third party] and the reconciliation and payment of sales commissions," which work was done by full-time, paid employees. *Id.* at 302-03. The Court rejected plaintiffs' contention that these activities rendered it an active corporation engaged in business in New Jersey, holding that:

> [t]his Court is not convinced that the work conducted by Bonnie & Co. after [its move to New Jersey] falls under business transactions as the purpose of this work was not to manufacture and sell women's clothing. Indeed, Bonnie & Co.'s work would more appropriately be considered a winding down of affairs.

*Id.* at 303.

The nature of the work upon which Defendants attempt to rely here does not even rise to the level of activity that the *Bonnie* court considered and found wanting, as every activity concerns the resolution of issues relating to the West Virginia business they sold to the Plaintiff.

### (2)   Contemplation of Future Activities Does Not Make Defendants "Active"

Perhaps recognizing that the activities in which they have been engaged since the closing are inadequate to establish them as "active" corporations, Defendants next contend that they are "active" because they "have considered new opportunities for growth [and] have contemplated providing consulting services to metals companies . . ." (Megy Aff. ¶ 21; Def. Br. at 16). However, Defendants have not engaged in a single transaction in furtherance of this contemplated new "consulting" business. To the contrary, Mr. Megy readily admits that "as of this date, [Defendants] have not pursued a consulting business." (Megy Aff. ¶ 21).

The mere consideration of some future business endeavor – without any actual activities in furtherance of it – is simply not sufficient to transform either Jamegy Defendant into an active,

5

ongoing business concern. In this regard, Defendants' reliance on *Raine v. Entertainment Acquisition Co.*, No. 95 Civ. 3193, 1996 WL 428394 (S.D.N.Y. July 31, 1996) is misplaced. In that case, following a move from California to New Jersey, the defendant corporation negotiated and executed a new distribution agreement to share in revenues from films which the defendant owned, later amended that agreement, held annual shareholder meetings and paid the salaries of corporate officers. On those facts – *which are totally absent here* – the court found the defendant was active in New Jersey. *Id.* at *4.

Here, Defendants have not changed the nature of their business activities, have not entered into ongoing contracts and have not generated a penny of income. *See Interpetrol Bermuda, Ltd. v. Rosenwasser*, No. 86 Civ. 5631, 1987 WL 7734, at *1-2 (S.D.N.Y. Mar. 3, 1987) (corporation is inactive where it "has not generated revenue, entered contracts, or employed paid personnel for a period of years").

### (3)     *Payment of a Single Nominal Salary Does Not Make Defendants "Active"*

Nor does Defendants' claim that they paid Devin Megy $100,000 over a period of two years to carry out the activities discussed above make them active corporations. The payment of a modest salary to a single corporate officer who is charged with resolving a corporation's outstanding liabilities and obligations does not make a corporation "active." *See Bonnie*, 18 F. Supp. 2d at 303 (corporation inactive despite payment to employees where such employees were not attempting to negotiate or enter into any contracts or engage in any ongoing business endeavors).[2]

---

[2]     Defendants' reliance on *SEG Vanguard General Corp. v. Jianxiong Ji,* 195 F. Supp. 2d 564 (S.D.N.Y. 2002) is misplaced. In *SEG*, the court found that plaintiff was "active" based on a number of facts that are not present here. In *SEG* the plaintiff not only paid salaries and medical and dental insurance premiums for two employees, but also main-

**C.    West Virginia Was the Last Place That Defendants Conducted Business**

In the alternative, Defendants argue that, even if they are now inactive, Oregon was the last place they transacted business. (Def. Br. at 17-18). This claim is belied by their own corporate filings, which continued to identify West Virginia as both Defendants' principal place of business until after this litigation was filed. Such filings constitute an admission by Defendants and are a factor in determining their principal places of business for diversity purposes. *Hungarian Broad. Corp. v. Coleman & Co.*, No. 96 Civ. 0048, 1996 U.S. Dist. LEXIS 9204, at *5 (S.D.N.Y. July 2, 1996) (though not dispositive, corporate filings are a factor in ascertaining principal place of business). Defendants have failed to provide any adequate factual explanation for their continued identification of West Virginia as their principal places of business in documents which they filed with the Oregon Secretary of State, other than that they "neglected to revise certain corporate filings." (Def. Br. at 3; Megy Aff. ¶ 24).

Moreover, as discussed below, all of the activities which Defendants claim to have conducted in Oregon were actually implemented in West Virginia (*see infra* at 9). Accordingly, none constitute ongoing business transactions sufficient to establish either Jamegy Defendant as an active Oregon corporation.

**II.    EVEN UNDER THE "PLACE OF OPERATIONS" TEST
WEST VIRGINIA IS DEFENDANTS' PRINCIPAL PLACE OF BUSINESS**

Even assuming the Court finds the Defendants are "active," the controlling "place of operations" test establishes that Defendants' principal places of business are in West Virginia.

---

tained an active bank account, incurred large telephone bills to its parent corporation in China and "most importantly," borrowed over $200,000 to fund its operations. *Id.* at 568.

This is so because all of Defendants' self-professed business activity related to the West Virginia

Facility and operations and activities that were implemented only in West Virginia.

Under the "place of operations" test, which Defendants' claim would be applicable here,

the court focuses on the state in which the corporation "has its most extensive contacts with or

greatest impact on, the general public." *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d

651, 655 (2d Cir. 1979). Where, as here, a party's sole business purpose is the continued

oversight of a single, albeit former, business interest, courts have deemed the location of that

interest, rather than the location of any executive offices, to be the corporation's principal place

of business. *See Pine Ridge Realty Corp. v. Block & Co.*, No. 97-2076, 1997 WL 292136, at *5-8

(D. Kan. May 16, 1997) (principal place of business in Kansas where corporation oversaw

operations that were owned by another even though plaintiff had no employees or office in

Kansas and maintained corporate offices and made policy decisions in Connecticut); *Bialac v.

Harsh Bldg. Co.*, 463 F.2d 1185, 1186 (9th Cir. 1972) ("Where a corporation is engaged in only

one business activity, substantially all of whose operations occur in one state, even though policy

and administrative decisions are made elsewhere, the state of operation is the corporation's

principal place of business . . . ."); *Riklis v. Reese*, No. 06 Civ. 6368, 2007 WL 1946536, at *7

(S.D.N.Y. June 28, 2007) (state where plaintiff still had an interest in property that it previously

owned and derived its income from was the plaintiff's principal place of business because that

was the state where the plaintiff had its "greatest public impact"); *cf. Circle Indus. USA, Inc. v.

Parke Constr. Group, Inc.*, 183 F.3d 105, 108 (2d Cir. 1999) (corporation with no office in

Georgia nevertheless had its last principal place of business in Georgia because it was still

collecting accounts receivable in Georgia; the fact that its sole officer and director lived in

another state and received the corporation's mail there did not change the analysis because such

conduct was not "transacting business"). These cases correctly recognize that a corporation's principal place of business is in the state where its decisions are implemented and effectuated, rather than where they are made.

Applying this standard here, under the facts asserted by Defendants, their principal places of business are West Virginia. This is especially true where, as here, the Defendants have admitted in their official state filings that their principal places of business were in West Virginia – the very state where their decisions and business activities were targeted and implemented.

Here, even assuming the veracity of Defendants' assertions, their only activities concern their continued oversight of the West Virginia Facility they sold to Plaintiff or, as Defendants' put it, the "meeting of their post-sale obligations." (Def. Br. at 15). Specifically, Defendants' alleged business activities involve the following West Virginia actions:

> (1) quarterly environmental activities at the West Virginia Facility including, hiring persons to monitor groundwater runoff and decommission and close wells at the West Virginia Facility (Megy Aff. ¶ 19);
>
> (2) maintaining a "tail" insurance policy governing past activities at the West Virginia Facility (Megy Aff.¶ 17);
>
> (3) participating in the installation of a lift and other repairs at the West Virginia Facility in connection with a fire at the West Virginia Facility (Megy Aff.¶ 20); and
>
> (4) continuing to maintain a bank account in Pittsburgh, which was funded while Defendants were in West Virginia and which contains funds that at present may *only* be used to pay liabilities incurred at the West Virginia Facility.  (Megy Aff.¶ 18).

All of these activities were directed to, implemented in, and impacted the public in West Virginia. Conversely, Defendants do not identify a single business activity that concerns assets or operations in Oregon, or have had any impact on, or even contact with, the public in Oregon.[3]

---

[3]    The fact that Defendants claim that their office and sole employee are located in Oregon is of no consequence. *See Pine Ridge*, 1997 WL 292136, at *5-8.

Thus, even if Defendants are considered active corporations, because Defendants only "visible" conduct that impacted the general public was in West Virginia, West Virginia is their principal place of business.

## III.     A STAY PENDING RESOLUTION OF THIS MOTION IS WARRANTED

Where, as here, a brief stay will avoid unnecessary or duplicative litigation, it is well within the Court's discretion to grant it.  Defendants cite no case that supports their argument that a stay pending resolution of a motion to remand requires "a clear case of hardship."  Rather, motions to stay are routinely granted in cases like this where the pending remand motion will result in the dismissal of this entire action from this Court.  *See Murray v. Hy Cite Corp./Royal Prestige*, 150 F. Supp. 2d 527, 530 (E.D.N.Y. 2001) (granting stay of discovery pending the outcome of the motion for remand).

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that this matter be remanded to state court due to the absence of complete diversity.  While this motion is pending, Plaintiff respectfully requests that this Court stay discovery so as to avoid unnecessary and duplicative litigation.

Dated: July 29, 2008

<div style="margin-left:40%">

Respectfully submitted,

/s/  John Boyle
Michael W. Mitchell (MM 6310)
John Boyle (JB 0136)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York  10022
(212) 735-3000
*Attorneys for Plaintiff AL Solutions, Inc.*

</div>

10

## CERTIFICATE OF SERVICE

I, John Boyle, hereby certify that on July 29, 2008, I caused true and correct copies of AL Solutions, Inc.'s REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND to be served by email and ECF by sending copies of the same to Defendants' counsel listed below:

Maxine Gail Sleeper
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, NY  10036
(212) 479-6058
msleeper@cooley.com

Hans Harris Chen
hchen@cooley.com
Robert R. Vieth
rvieth@cooley.com
Joseph J. Samarias
jsamarias@cooley.com
Cooley Godward Kronish LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, VA 20190-5656
(703) 456-8000

/s/  John Boyle
John Boyle